UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GULF PRODUCTION COMPANY, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 08-5016**<br>**APPLIES TO:**<br>**09-104** |
| **HOOVER OILFIELD SUPPLY, INC., ET AL** | **SECTION: "B"(4)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss claims of B & L Exploration, LLC ("BL") and Biloxi Marsh Lands Corporation ("Biloxi")(referred to collectively as "Plaintiffs") filed by Hoover Oilfield Supply, Inc. ("Hoover") and Polyflow, Inc. ("Polyflow")(referred to collectively as "Defendants") (Record Document No. 6). The motion is opposed (Record Document No. 17). **IT IS ORDERED** that for the following reasons, the instant motion is **DENIED**.

### Statement of Facts:

Plaintiffs filed this diversity action against Defendants to recover damages resulting from the alleged improper application of a natural gas flow line over land owned by Biloxi. BL is the owner of oil and gas leases along with mineral interests in St. Bernard parish. Hoover sells, supplies and supervises the installation of

natural gas flow lines made with Thermoflex pipe, which is manufactured by co-defendant Polyflow. Hoover is a certified distributor of Thermoflex pipe and requires that one of their qualified technicians oversee the installation and fabrication of line pipe with Thermoflex.

Hoover entered into a contract with Gulf Production ("Gulf") for the installation of a natural gas flow line ("flow line") to be constructed with Thermoflex piping that was to transport natural gas from producing wells on St. Bernard properties over Biloxi's land.

BL along with Gulf are participating members in a Joint Operating Agreement ("agreement") for the development, production, and sale of oil and gas or other minerals from certain properties in St. Bernard Parish.  Under the agreement, Gulf became the designated operator. As a party to the agreement, BL contributed to the costs for development, recovery, production, transmission, and sale of natural gas. BL was responsible for its share of all related costs and expenses in the acquisition, fabrication, and installation of the flow line.

Plaintiffs allege that representatives and technicians from Defendants directed and participated in the fabrication, construction, and installation of the flow line. Also, plaintiffs allege that Defendants confirmed and warranted in writing that the Thermoflex pipe was rated at a maximum operating pressure of 1200

psi and a braid strength at over 1700 psi, indicating the flow line's fitness for the purpose of transporting natural gas over long distances (See Rec. Doc. 1). On the day the construction of the flow line was completed, it failed during a hydrostatic test at 756 psi. During the failure, the flow line ruptured in several places, causing the pipe line to twist and coil over the marsh, damaging the marsh, wetlands and water bottoms.

**Law and analysis:**

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir.2002); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980). When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded allegations and resolve all doubts in favor of the plaintiff. *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988). "Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." *Lane v. Halliburton*, 529 F.3d

548, 557 (5th Cir. 2008) (*citing Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965-68 (2007)).

For a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), the party asserting jurisdiction has the burden to prove that jurisdiction is proper. *In re Katrina Canal Breaches Litigation*, 2009 WL 1868980, 2 (5th Cir. 2009)*citing Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). "We review dismissals under Rules 12(b)(1) and 12(b)(6)…according to the same standard." *Wells v. Ali*, 304 Fed.Appx. 292, 293, 2008 WL 5381308, 1 (5th Cir. 2008) citing *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993); *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992).

**A. Negligence**

Articles 2315 and 2316 of the Louisiana Civil Code allow recovery for damages including those resulting from negligence and negligent misrepresentation. *Devore v. Hobart Mfg. Co.,* 367 So.2d 836 (La. 1979); *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007 (La. 1993).[1] "The elements of a cause of action for negligence are well established. A plaintiff must establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; (3) the plaintiff suffered damages; and (4) the breach of the

---

[1] Article 2315 of the Louisiana Civil Code provides that "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2316 follows with "Every person is responsible for the damage he occasions not merely by his act, by his negligence, his imprudence, or his want of skill". La. C.C. Art. 2315-16.

4

duty proximately caused the damages." *See Lloyd's Leasing Limited v. Conoco,* 868 F.2d 1447, 1449 (5th Cir. 1989).

According to the Fifth Circuit,

> "Whether a defendant owes a duty to a plaintiff depends on various factors, and the primary indicator of duty is whether the harm suffered by the plaintiff was foreseeable. *Consolidated Aluminum v. C.F. Bean Corp.,* 833 F.2d 65, 67 (5th Cir. 1987). Harm is foreseeable if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention. *Id.* at 68. In *Consolidated Aluminum,* an aluminum reduction plant sued a dredge operator who cut a pipeline that supplied power to the plant. Once the dredge cut the pipe, the pipe's owner turned off its supply of gas. As a result, the plaintiff's plant could no longer power its electrical generators. The plant and the work-in-progress were damaged. The court held that the dredge operator owed no duty to the plaintiff because its harm "was not of a general sort expected to follow from the failure to dredge carefully in proximity to a gas pipeline." *Id.* The court also offered examples of foreseeable harms: "Injury to property and persons from the escaping gas, or from a fire which might have ensued, would be examples of consequences that would be foreseeable." *Id.* According to the court, "[t]he injury to the plant fell outside the general, reasonably anticipated class of harm as a result of negligent dredging."

*Crear v. Omega Protein, Inc.* 86 Fed.Appx. 688, 690-691 (5th Cir. 2004)(*citing Consilidated Aluminum*, 833 F.2d 65, 67 (5th Cir. 1987).

5

In the instant case, injury to property and persons as a result of a failure of the flow line was foreseeable and had grave consequences. Specifically, the damage on Biloxi's land, its economic losses as a result of the flow line failure and BL's costs for installing and later repairing the flow line were reasonably foreseeable consequences. Moreover, even if the Defendants were unaware that Biloxi owned the land over which the flow line was being built, it was reasonably foreseeable that the landowner of the marsh was "part of an anticipated class of individuals [who could be harmed as a result of the failure of the flow line]." *Id.* at 690-691.

Moreover, under Articles 2315 and 2316 of the Louisiana Code, "privity to a contract is not required to bring a claim for recovery of damages against a contracting party." *Marine Ins. Co. v. Strecker*, 234 La. 522, 532 (La. 1957); Crawford, W.E., 12 La. Civ. L. Treatise, Tort Law § 16:6 (2d ed.); *Aucoin v. Southern Quality Homes, LLC*, 984 So.2d 685, 692 (La. 2008)(*stating "Louisiana has aligned itself with the consumer-protection rule, by allowing a consumer without privity to recover, whether the suit be strictly in tort or upon implied warranty."*). However, "[a] non-contracting party may be barred from bringing a claim if there is no "proof of negligence, establishment of the fact that the damage was foreseeable or probability that danger would result from the defective construction,

or no proof that the injury was proximately caused by the contractor's conduct." *Marine*, 234 La. at 532.

Plaintiffs have established that the damage was foreseeable and that danger from defective construction of the Thermoflex pipe was probable. "Although the law does not set out to protect every potential plaintiff from every risk, the plaintiff's burden on a motion to dismiss is minimal and the plaintiff need only prove a plausible set of facts that support their claim(s) and that justify relief." *Cleco Corp. v. Johnson*, 795 So.2d 302, 305(La. 2001); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (*citing Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965-68 (2007)). Thus, Plaintiffs have established enough facts to support a claim for negligence.

### B. Misrepresentation

Louisiana Civil Code Articles 2315 and 2316 provide for the protection of individuals damaged by the negligent acts of others and "[e]ncompass causes of action for negligent misrepresentation." *Barrie*, 625 So.2d at 1014; La. C.C. Art. 2315-2316. In determining "whether to impose liability [for negligent misrepresentation]", Louisiana employs the duty-risk analysis standard. *Lemann v. Essen Lane Daiquiris,* 923 So.2d 627, 633 (La.2006); *see also Barrie v. V.P. Exterminators,* 625 So.2d 1007, 1015 (La.1993) (*holding that "case by case employment of the duty/risk analysis is the appropriate standard in this state for determining legal*

*responsibilities for negligent misrepresentations"*). Under this standard, a plaintiff must prove the following five elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008); *Lemann,* 923 So.2d at 633 (*citing Fowler v. Roberts,* 556 So.2d 1, 4 (La.1989)). "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." *Mathieu v. Imperial Toy Corp.,* 646 So.2d 318, 321 (La.1994).

The initial inquiry is whether the defendant had a duty to "conform his conduct to a legal standard" to protect a plaintiff from harm. *Audler*, 519 F.3d at 249; *Lemann,* 923 So.2d at 633; *Meany v. Meany,* 639 So.2d 229, 233 (La.1994); *Barrie,* 625 So.2d at 1016. In deciding whether to impose a duty in a particular case, Louisiana courts examine "whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty."

*Audler*, 519 F.3d at 249 *quoting Faucheaux v. Terrebonne Consol. Gov't,* 615 So.2d 289, 292 (La.1993).

Plaintiffs cite Louisiana Civil Code Articles 2315 and 2316. Rec. Doc. No. 17 at 13-14. Article 2315 of the Louisiana Civil Code provides that "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2316 follows with "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill". La. C.C. Art. 2315-16.

In *Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008), the plaintiff relied on *Barrie v. V.P. Exterminators* jurisprudence. *Audler*, 519 F.3d at 250 *citing Barrie,* 625 So.2d at 1007. The plaintiff brought an action against the defendant for allegedly erroneous determinations that property owned by the plaintiff was outside a Special Flood Zone Hazard area. *Id*. at 245. The primary issue on appeal was whether, under Louisiana law, the defendant owed a duty to the plaintiff. *Id*. In *Barrie*, the Louisiana Supreme Court outlined a number of factors to be considered in determining whether a duty is owed where a plaintiff has a claim for negligent misrepresentation and there is an absence of privity of contract or fiduciary relationship between the plaintiff and the alleged tortfeasor. These factors include (1) whether the tortfeasor could expect that the plaintiffs would receive and rely upon the information, (2) whether the plaintiffs are members of the limited group for whose benefit

9

and guidance the [information] was contracted and supplied, (3) whether [the work] is done…in the context of a business transaction for which the alleged tortfeasor received compensation and (4) whether extending tort liability would serve public policy. *Barrie*, 625 So.2d at 1017-18.

In *Audler*, the plaintiff's argument focused primarily on the first *Barrie* factor-the defendant's knowledge that the special flood zone report would be provided to the plaintiff. Although the court agreed that specific regulation required that the plaintiff be notified of the result of the defendant's determination, this alone was not sufficient to impose a duty for the defendant to provide accurate information to the plaintiff. Moreover the court found that the plaintiff was not a member of a limited group for whose benefit and guidance the special flood hazard determination was prepared. *Id*. at 251; *See Thomas v. Livingston Parish Sheriff's Office,* 923 So.2d 662 (La.Ct.App.2005).

In the instant case, Defendants contracted with Gulf, not Plaintiffs to install and fabricate a flow line. Based on the alleged facts no privity existed between Defendants and Plaintiffs. Plaintiff's arguments focus primarily on the first *Barrie* factor. Plaintiff argues that Hoover knew that its representations as to the fitness of Thermoflex would be shared with all owners of the line who would be using it to transport their production to a point of sale and likewise would be made known to the landowner over

whose property the flow line would run. Rec. Doc. No. 17 at 16, 18. Plaintiffs are members of a limited group (parties to agreement and landowner) for whose benefit and guidance the [information] was contracted and supplied. Also, according to Plaintiffs, Hoover certified that the Thermoflex pipe could withstand a specific pressure and its warranty and certifications of the Thermoflex piping would be shared with all owners of the line and the landowner.

Alternatively, in *Barrie* "[t]he seller of a home obtained a termite inspection report that negligently concluded that the home had no evidence of termite infestation. The plaintiff (purchaser of the home) sued the defendants, alleging negligent misrepresentation." *Barrie*, 625 So. 2d at 1014. Citing the Louisiana Supreme Court, the Fifth Circuit explained that:

> "The duty was owed to the [plaintiffs] even though they were a third party to [the defendant], without privity of contract or direct or indirect contact, because they were known to [the defendant] as the intended users of the report. The plaintiffs were members of the limited group for whose benefit and guidance the report was contracted and supplied. [The defendant] owed the duty to the [plaintiffs] because of its knowledge that the ultimate purpose for the information provided to the plaintiffs, and its employment, was to facilitate the sale of the dwelling it inspected. The plaintiffs' expected use of the report made the magnitude of their loss a foreseeable probability. The obligation for the liability is imposed by law based upon policy considerations due to the tortfeasor's

11

> knowledge of the prospective use of the information which expands the bounds of his duty of reasonable care to encompass the intended user. *Id.* at 1017. The court also found relevant the fact that [the defendant] did not perform its services gratuitously." *Id.* Rather, [the defendant] "gathered and conveyed the information in the context of a business transaction for which [the defendant] received compensation." *Id.*

*Audler* at 250(*quoting Barrie*, 625 So. 2d at 1017).

Similarly in the instant case, although Plaintiffs were not privy to the contract, they were intended and reasonably foreseeable users of the information that Defendants provided them. Although alleged by Plaintiffs, it is unclear from the facts whether Defendants knew that Plaintiffs were co-purchasers of their services. However, Defendants knew that the ultimate purpose for the information that they provided to Plaintiffs and the reason for their employment was to facilitate and execute the fabrication and installation of a flow line. The intended users of the flow line were members of the agreement along with the landowner, Biloxi. Rec. Doc. No. 17 at 4-6. Also, Defendants were compensated for their services. "[T]he plaintiff's burden on a motion to dismiss is minimal and the plaintiff need only prove a plausible set of facts that support their claim(s) and that justify relief." *Cleco Corp. v. Johnson*, 795 So.2d 302, 305(La. 2001); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (*citing Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965-68 (2007)). Also,

12

all doubts must be resolved in favor of the plaintiff. *Tanglewood East Homeowners*, 849 F.2d 1568 at 1572. Consequently, Plaintiffs have established sufficient facts to support a claim for negligent misrepresentation.

The elements for a cause of action for intentional misrepresentation in Louisiana are: (a) a misrepresentation of a material fact; (b) made with the intent to deceive; and (c) causing justifiable reliance with resultant injury. LSA-R.S. 13:3201 Restatement (Second) of Torts § 310 (1965); *Guidry v. United States Tobacco*, 188 F.3d 619, 627 (5th Cir. 1999). Plaintiffs allege in their complaint that Hoover intentionally withheld information as to the capabilities and limitations of Thermoflex pipe to function as a natural gas flow line. According to plaintiffs Hoover was a certified seller of Thermoflex pipe and required that a Hoover technician be present to oversee the installation and construction of the Thermoflex flow line. They further allege that Hoover withheld information that it knew to be critical so that it could secure the sale of the Thermoflex pipe for use as a flow line. Plaintiffs assert that the extent of what information was withheld ranges from knowledge that the pipe had never been used before in this application, to knowledge that it had never been tested to determine the safe operating pressures of Thermoflex pipe. Plaintiffs allege that discovery will ferret out the information that was withheld. At this stage of the proceedings, Plaintiffs

have made an adequate prima facie showing that they have a cause of action against Hoover for intentional misrepresentation.

### 3. Redhibition

Article 2521 of the Louisiana Civil Code defines a defect or vice as redhibitory in nature when it is hidden, that is, not apparent, or known to the buyer. La. C.C. Art. 2521. Thus, a defect is not hidden and therefore not redhibitory, when the buyer knows of it either because it was disclosed by the seller or because the buyer discovered or should have discovered it by himself. La. C.C. Art. 2451.

Under Louisiana law, "sellers impliedly warrant buyers against redhibitory defects, or vices, in the thing sold." La. C.C. Art. 2520. Moreover, sellers are especially required to know of any redhibitory defects in their product when they are also the manufacturer of the product. La. C.C. Art. 2545. "Liability in redhibition occurs when: 1) the seller sells a thing to the plaintiff and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had the plaintiff known of the defect, he would never have purchased it; 2) the thing contained a non-apparent defect at time of sale; and 3) the seller was given an opportunity to repair the defect." *New Orleans Assets v. Carl E. Woodward. L.L.C.*, 2003 U.S. Dist. LEXIS 3383 (E.D. La. Jan. 22, 2003). The plaintiffs allege that Thermoflex pipe was rated at a

maximum operating pressure of 1200 psi and a braid strength at over 1700 psi. *See* Rec. Doc. 1. However on June 27, 2008, the flow line failed during a hydrostatic test at only 756 psi.

The failure during the test revealed that the Thermoflex pipe could not withstand the transport of highly pressurized natural gas. This made the piping useless for its intended purpose, which was to carry pressured natural gas over long distances.

Also, it is unclear whether the defect was apparent to the buyer. A buyer has a duty to make an inspection that is reasonable in light of all the circumstances surrounding the sale See, e.g., Pursell v. Kelly, 244 La. 323, 152 So.2d 36, 41 (La. 1963); Crow v. Laurie, 729 So.2d 703, 707-08 (La. App. 1 Cir. 2/19/1999). **"Whether an inspection is reasonable depends on the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller."** (Emphasis Added). *See Merlin v. Fuselier Constr., Inc.*, 789 So.2d 710, 715 (5th Cir. 2001); *see also* LeMaire v. Breaux, 788 So. 2d 498, 501 (5th Cir. 2001) (*requiring the buyer to conduct further investigation "as would be conducted by a reasonably prudent buyer acting under similar circumstances*)." *New Orleans Assets v. Carl E. Woodward. L.L.C.*, 2003 U.S. Dist. LEXIS 3383, 8-9 (E.D. La. Jan. 22, 2003).

It is unclear from the facts whether BL conducted a reasonable inspection of the Thermoflex piping and flow line construction.

However, Plaintiffs in their complaint argue that they relied on assurances made by the Defendants. Rec. Doc. No. 17 at 16. Alternatively, BL is in the business of natural gas and as a result should have some knowledge and expertise. Moreover, there appeared to be ample opportunity for inspection of the piping.

Also, it is unclear whether the seller was given an opportunity to repair the defect. Both Plaintiffs allege that they suffered economic loss in the repair and reinstallation of a flow line. Rec. Doc. 17 at 9-10.

"[T]he plaintiff's burden on a motion to dismiss is minimal and the plaintiff need only prove a plausible set of facts that support their claim(s) and that justify relief." *Cleco Corp. v. Johnson*, 795 So.2d 302, 305(La. 2001); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (*citing Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965-68 (2007)). Also, all doubts must be resolved in favor of the plaintiff. *Tanglewood East Homeowners*, 849 F.2d 1568 at 1572.Plaintiffs have established sufficient facts to show that the piping was defective in that it did not withstand a pressure test and certainly could not have withstood the actual transport of natural gas through the flow line. At this stage of the proceedings, plaintiffs have made an adequate showing that they have a cause of action against Defendants for redhibitory defects in the Thermoflex piping.

Consequently, accepting all of the allegations of fact set forth in Plaintiffs' petition for damages as true, the court finds that Plaintiffs have minimally stated a cause of action against Defendants, for negligence, negligent or intentional misrepresentation and redhibition.

New Orleans, Louisiana, this 16th of November, 2009.

_____
UNITED STATES DISTRICT JUDGE