**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GULF PRODUCTION COMPANY, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO:    08-5016** |
| | **C/W    09-2779** |
| | **09-0104** |
| **HOOVER OILFIELD SUPPLY, INC., ET AL.** | **SECTION: "B" (4)** |

<u>ORDER</u>

Before the Court is a **Motion to Quash Deposition and Trial Subpoenas of Kjel Brothen and Charles Bradbury (R. Doc. 356)** filed by the State of Louisiana, through the State Mineral and Energy Board, seeking an Order from this Court quashing the deposition and trial subpoenas for Kjel Brothen and Charles Bradbury issued by Polyflow, Inc. ("Polyflow"). The Plaintiffs filed a memorandum in support of the motion. (R. Doc. 378). Polyflow filed a reply in opposition. (R. Doc. 368.) This motion was heard with oral argument on **March 23, 2011,** on an expedited basis. (*See* R. Doc. 376.)

I.    <u>Background</u>

Gulf Production Company, Inc. ("Gulf Production") filed the underlying diversity action on November 26, 2008. Gulf Production is the operator and working interest partner of a joint operating agreement whose purpose is the exploration and development of leased and/or oil and gas interest for the production of oil and gas in St. Bernard Parish, Louisiana. (R. Doc. 20, p. 2.) The other working interest partners are Gulf Explorer, Kaiser, and Ralaco. Each working interest partner receives a

percentage of ownership based on the percentage invested in the project.  (R. Doc. 20, p. 3.)  Through the joint operating agreement, Gulf Production and the other working interest partners held mineral leases which enabled them to operate, develop, and produce oil and gas from the leased land.  At issue in the present case are two wells located on the leased land which were found to be capable of producing natural gas to be transmitted to a point of sale.  (Case No. 09-104, R. Doc. 5-1, p. 1.)

As the operator, Gulf contracted with Hoover, a distributor, for a Thermoflex Pipe that would be installed in the well heads of two different wells to transport natural gas to a production facility for eventual sale.  (R. Doc. 20, p. 3.)  Polyflow, the manufacturer of the Thermoflex Pipe, had a distributorship agreement with Hoover. (R. Doc. 20, p. 3.)  Allegedly, Hoover and Polyflow represented that the pipes could withstand the amount of pressure necessary to transport the gas.  The flow line was installed and construction was completed on June 27, 2008.  The flow line was tested on the same day and the test results indicated that the pipes failed to perform to the expected standards. On July 1, 2008, the pipes were re-tested and failed.  (R. Doc. 20, p. 4.)  Due to the gas line failure, there was no extraction of natural gas from the two wells.  The length of time that the failure of the pipes prevent oil and gas extractions is disputed.

The Plaintiffs filed suit against the Defendants alleging redhibition, negligence, misrepresentation, and violation of the Louisiana Unfair Trade Practices Act and the Louisiana Products Liability Act.  (R Doc. 1, ¶¶ 16-17.)  The Plaintiffs seek damages, including loss of revenue resulting from the failure of the flow lines.[1]

As a defense, Polyflow has alleged that the operator of the facility, Meridian Exploration, did

---

[1]On March 14, 2011, the following parties reached a settlement agreement: Gulf Production Company, Inc., Gulf Explorer, LLC, Kaiser-Francis Gulf Coast, Ralaco Ventures, LLC, 50196, LLC, B&L Exploration, LLC, Biloxi Lands Corporation, Lake Eugenie Land & Development, Inc., Louisiana State, Hoover Oil Field Supply Company, Inc., and National Union Fire Insurance Company of Pittsburgh, Pa.  (*See* R. Doc. 331).

not obtain the proper authorization to commingle gas.  Polyflow contends that because the commingled gas from the subject wells were commingled without authorization from the Office of Conservation during the period that the Plaintiffs are claiming damages, they are not entitled to recover in the instant matter.

As to the instant motion, Polyflow noticed the depositions of Charles Bradbury, an engineer in the Office of Mineral Resources, Louisiana Department of Natural Resources, and Kjel Brothen, the assistant director of the Regulatory Section of the Office of Conservation, Louisiana Department of Natural Resources, to occur on March 17, 2011.  Polyflow also subpoenaed both individuals to testify at trial.  The State filed the motion seeking to quash the notices of deposition because they were issued past the discovery deadline and are irrelevant.  The State also contends that the deponents' testimony is subject to the deliberative process privilege.  Polyflow opposes the motion.

## II.   <u>Standard of Review</u>

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  Fed.R.Civ.P. 26(b)(1).   The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court."  *Coleman v. Amer. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably

cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(c).  In assessing whether the burden of the discovery outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  *Id*.

**III.   Analysis**

        **A.   Timeliness of Requests**

As a preliminary matter, the Court notes that both parties made arguments relating to whether or not the depositions were timely noticed under the presiding Judge's Scheduling Order.  However, on March 22, 2011, the presiding Judge continued the trial in order to "allow the completion of depositions." (R. Doc. 38.)  Therefore, the parties' arguments relating to the timeliness of the notices are no longer applicable, as the presiding Judge has clearly granted additional time in which to conduct the previously noticed depositions.

        **B.   Subpoenas for Trial**

Further, in light of the presiding Judge's continuance of the trial, the motion, insofar as it seeks to quash the trial subpoenas of both Bradbury and Brothen, are moot.  As a result, the Court will only consider the arguments relating to the State's motion to quash the notices of deposition.

        **C.   Relevancy of Depositions**

The State contends that the purpose of deposing Bradbury and Brothen are not readily apparent from the notice because they do not have first hand knowledge of the instances underlying the case. However, through conversations with Polyflow's counsel, the State believes that Polyflow intends to

4

depose these individuals regarding the process of reviewing commingling applications.  The State contends that the Defendants have an alternative means of securing the information by simply reviewing the pertinent laws, regulations, and public records.  Therefore, Polyflow should obtain this information from less invasive means than through a deposition.

The State further contends that, to the extent Polyflow seeks legal communications or information regarding the decision making process, this information is unobtainable because this determination is within the sole original jurisdiction of the Commissioner of Conservation through the Louisiana Administrative Procedures Act.

In response, Polyflow contends that the plaintiffs in this matter, including the State, have alleged damages which are calculated by assumed start dates in which they believe the wells at issue should have began producing gas.  However, through some recently acquired discovery documents, they believe that a permit for commingling was not in place at the time of these start dates, and therefore gas should not have been flowing as of the dates proposed by the plaintiffs.  Polyflow contends that if there was no permit in place, then gas could not have flown legally, and therefore the plaintiffs should not be entitled to recover damages until the permit was received.  In support of their theory, Polyflow has various documents, including an e-mail written by Will Rudolph, which suggest that there was no permit in place.  As a result, Polyflow seeks to depose the two witnesses from the Office of Conservation in order to acquire information relating to the process of obtaining a commingling permit.

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958).  Discovery is intended to operate

with minimal judicial supervision unless a dispute arises and one of the parties files a motion involving judicial intervention.  "The rules require that discovery be accomplished voluntarily; that is, the parties should affirmatively disclose relevant information without the necessity of court orders compelling disclosure." *Bush Ranch v. E.I. DuPont Nemours and Co.*, 918 F.Supp. 1524, 1542 (M.D. Ga. 1995), *rev'd on other grounds*, 99 F.3d 363 (11th Cir. 1996); *Cruz v. United States*, No. 3:09-cv-155-J-25TEM, 2010 WL 2612509 (M.D. Fla, June 25, 2010).

"Rule 26 embraces all 'relevant information' a concept which is defined in the following terms: 'Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Victor v. Lawler*, 3:08-CV-01374, 2010 WL 2595945, at * 2 (M.D. Pa. June 24, 2010); *see also United States v. Shaw*, No. 04-2503 RDR, 2005 WL 3418497, at * 1 (D. Kan. 2005)(stating that relevancy is broadly construed to "as a general proposition, a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party"(quoting *Sheldon v. Vrmonty*, 203 F.R.D. 679, 689-90 (D. Kan. 2001))).

At the hearing, the State indicated that, contrary to Polyflow's assertions, Charles Bradbury is not a part of the Office of Conservation, which is the office which handles commingling applications and permits.  Instead, he works in the Office of Mineral Resources, which is the office which handles mineral leases.  Therefore, Charles Bradbury would not have any knowledge as to the commingling permit applications such that his testimony is not relevant.

At the hearing, the State confirmed that Brothen, on the other hand, does work in the Office of Conservation.  Counsel for the State conceded that Brothen would have knowledge as to past records of commingling permits and commingling applications rendering his testimony relevant and therefore discoverable.

6

D.    **Applicability of Deliberative Process Privilege**

Finally, the State contends that even if relevant, the notices of deposition should be quashed because the deponents can avail themselves of the protection of the deliberative process privilege to avoid being called to testify as to their internal discussions and thought processes in making internal decisions.  The State contends that under FRCP 45(c)(4), protections exist for subpoenas which seek the disclosure of privileged information.

The State contends that the deliberative process has been used to protect government officials from producing documents or being deposed regarding an agency's decision making and internal thought process.  The State contends that the deliberative process privilege protects discussions among and between State technical staff and decision makers related to any decisions to act or not to act with regard to commingling issues.  These conversations comprise of mental impressions, conclusions, and/or opinions directed at the internal decision making process of an agency, and are therefore privileged.

In response, Polyflow contends that the deliberative process privilege does not apply in the instant matter.  Polyflow contends that the privilege does not provide a blanket protection to a government agency related to its policy and or decision process.  Instead, two requirements must be met, specifically: (1) it must be pre-decisional before the adoption of an agency policy or decision; and it (2) must be deliberative in nature.  Polyflow contends that purely factual material is not protected by the privilege.  Further, Polyflow contends that the deliberative process privilege must be raised by an agency head or subordinate with high authority, and the assertion of the privilege by an attorney is therefore improper.  Polyflow contends that the State's attorney is not entitled to raise the privilege.

The purpose of the privilege is to protect the decision-making process from the inhibiting effect that disclosure of pre-decisional advisory opinions and recommendations might have on "the 'frank

7

discussion or policy matters' in writing." *NLRB v. Sears, Roebuck & Co.,* 421, US 132 (1975). This privilege is considered the "central purpose" of Exemption 5 of the Freedom of Information Act. The test for determining whether the material is protected by privilege is not whether the private party would be able to override the privilege in civil litigation by a showing of particularized need, but whether the material would "'routinely be disclosed' in private litigation" *Sears*, 421 U.S. at 149, n. 16. The privilege protects governmental agencies' internal communications that are deliberative in nature but not those that are "purely factual." *EPA v. Mink*, 410 U.S. 73, 88-89 (1973). The Fifth Circuit has found that in distinguishing between purely factual and deliberative materials, the analysis and evaluation of facts are as much a party of the deliberative process as analysis and evaluation of law. *Skelton v. U.S. Postal Service*, 678 F.2d 35 (5th Cir. 1982).

The privilege is narrowly construed, and in order for it to apply it must be considered both "predecisional" and deliberative. To qualify as predecisional, the document "must address activities antecedent to the adoption of an agency policy." To qualify as "deliberative", it "must address a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal policy matters." *Pacific Gas & Elec. Co.* 70 Fed. Cl. at 133.

Polyflow intends to depose Brothen in order to acquire information as to the "policies and procedures for the regulation of commingled hydrocarbons." (R. Doc. 368, p. 3.) As the State conceded at the hearing, there are applicable statutes and laws which address the process of reviewing commingling applications. Therefore, the process in which commingling applications are reviewed does not relate to the <u>adoption</u> of an agency policy because an applicable policy is already in place. Thus, the process is clearly not predecisional under applicable law and the deliberative process privilege is not applicable. As a result, the motion to quash the deposition of Brothen is denied.

IV.     <u>**Conclusion**</u>

Accordingly,

**IT IS ORDERED** that the State of Louisiana's **Motion to Quash Deposition of Trial Subpoenas of Kjel Brothen and Charles Bradbury (R. Doc. 356)** are hereby **GRANTED IN PART AND DENIED IN PART.**

- The State's request to quash the trial subpoenas of Kjel Brothen and Charles Bradbury are hereby **DENIED AS MOOT.**

- The State's request to quash the notice of deposition of Charles Bradbury is hereby **GRANTED.**

- The State's request to quash the notice of deposition of Kjel Brothen is hereby **DENIED.**

New Orleans, Louisiana, this 1st day of April 2011

**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**