```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA

GULF PRODUCTION COMPANY INC., ET AL   *    CIVIL ACTION
                                      *
VERSUS                                *    NO. 08-5016
                                      *    C/W 09-104, 09-2779
                                      *
HOOVER OILFIELD SUPPLY, INC., ET AL   *     S E C T I O N
"B"(4)
```

## ORDER AND REASONS

Before the Court is Defendant Polyflow, Inc. ("Polyflow")'s Motion for Partial Summary Judgment on Deferred Production Claims. (Rec. Doc. No. 173). Opposition memoranda have been filed at Rec. Doc. Nos. 182 and 190; Polyflow has filed its reply thereto at Rec. Doc. No. 241. For the reasons articulated below,

**IT IS ORDERED** that Defendant Polyflow's Motion for Partial Summary Judgment (Rec. Doc. No. 173) be and is hereby **DENIED.**

## Law and Analysis

A.  Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248,

1

(1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.   Nerco Oil & Gas, Inc. v. Otto Candies, Inc., et al.

The claims in *Nerco Oil & Gas, Inc. v. Otto Candies, Inc., et al.*, 74 F.3d 667 (5th Cir. 1996), arose from an allision between a vessel and an offshore oil and gas platform; thereafter the owners of the platform sued the vessel owner for damages. Due to the allision, three of the wells on the platform were "shut-in for between 31 and 50 days." *Id*. at 668. The claims for damage to the platform were settled leaving the issue of damages due resulting from the delay while repairs were carried out.[1]  *Id*. at

---

[1] Some cases in this district and secondary sources have discussed the holding of *Nerco*, although without directly addressing the opinion's ruling on the issue of royalties owed the MMS. *See Mobil Exploration & Producing v. A-Z/Grant Intern. Co.*, No. 91-3124, 1996 WL 204431 at *6 (E.D. La. Apr. 24, 1996) (denying Plaintiffs' Motion in Limine to Exclude Evidence of Damage Calculations); *See also* Symposium, *Fifth Circuit Symposium, Admiralty*, 42 Loy. L. Rev. 417, 441-42 (1996) (discussing *Nerco*'s revisiting methods of measuring "economic loss resulting from delayed production of oil and gas reservoirs.")

668.

The Fifth Circuit affirmed the District Court's method of calculation of damages, specifically a calculation for the "fair return on investment." *Id*. at 670. The court noted that a prior decision employing a "lost profit" calculation did so as the parties there presented only evidence of lost profits, and thus the "court did not have to consider whether a fair return on investment would be a better measure of damages."[2] *Id*. (citing *Continental Oil Co. v. SS ELECTRA*, 431 F.2d 391, 393 n.3 (5th Cir. 1970). The calculation formulated by the *Nerco* Defendant's expert witness, adopted by the District Court and affirmed on appeal calculated "monthly net revenue of the platform over the life of production had no accident occurred" and the "monthly net revenue of the platform during the life of production after the shutdown due to the accident." 74 F.3d at 669. Those "estimations were discounted to present value" the difference between which, the expert determined, was the "loss to the platform owners as a result of the allision." *Id*. This method of calculation, according to the Fifth Circuit accounts for "the additional time necessary to recover all oil and gas[,] . . . the loss of cash

---

[2]The *Nerco* court, comparing *Continental Oil Co. v. SS ELECTRA*, 431 F.2d 391 (5th Cir. 1970), noted that the platform owners in *Nerco*, although unable to produce oil from other wells to compensate for the loss from the three shut-in wells, "lost no oil or gas because of the accident. The true damage to platform owners [in *Nerco*] as acknowledged in *Electra* is that they will be required to remain at the site longer than expected to recover the oil and gas." *Nerco*, 431 F.3d at 669.

flow during the shut-in period, and the monthly delay in receiving revenue over the life of the well as a result of the accident." *Id*. at 669-70. The court also found the trial court was not clearly erroneous in its adoption of several of the same experts assumptions. *Id*. at 670.

However, the Fifth Circuit did find that the District Court had been clearly erroneous in including a royalty payment possibly due the United States Mineral and Mining Service ("M.M.S.") in the calculation of monthly revenue during the shut-in. *Id*.

> In Candies' cross-appeal, it asserts that the district court was clearly erroneous in not deducting the [M.M.S.] royalty in its computation of monthly revenue during the shutdown. In his original net revenue estimate, Hise deducted as an expense the M.M.S. royalty. The district court, however, required Hise to recalculate those figures without the expense deduction. The district court's reasoning for not including this expense was based on the premise that after the suit the platform owners may be forced to pay the M.M.S. royalty on the award. The district court's decision was based upon speculative testimony. Hise testified that he had heard of one case in which the M.M.S. had sought royalty payments on a court recovery for shut-in time. He was unaware of whether the M.M.S. actually recovered.
>
> The platform owner's oil and gas lease requires them to pay a royalty of 16 2/3% in amount or value of "production saved, removed or sold from the lease area." We have defined the word "production," as "the actual physical severance of minerals from the formation." *Diamond Shamrock Exploration Co., v. Hodel*, 853 F.2d 1159, 1168 (5th Cir.1988). Therefore, under this lease, the M.M.S. would not be entitled to a royalty until "production." No physical severance of oil or gas occurred during the "shut-in" period. Because the testimony concerning the M.M.S.'s desire to seek royalty in the "shut-in" case is speculative, and because the lease indicates the M.M.S. would not be entitled to such a royalty, we believe the district court was clearly

> erroneous in including the royalty payments in its award. The lease between the platform owners and the M.M.S. does require a minimum royalty payment of $3.00 per acre per year to maintain the lease. We presume that the actual royalty payments paid during the year of the accident were in excess of the minimum royalty due, but if not, Candies will be responsible for a portion of that cost. Therefore, we remand the case to the district court to modify the award to correct the M.M.S. royalty reimbursement.

74 F.3d at 670-71.

The holding of the *Nerco* court is inapplicable to the instant case. In *Nerco*, the M.M.S. had not filed suit against the vessel owner; in fact, the M.M.S. was not a party to the litigation. Here, and unlike the M.M.S in *Nerco*, the State has filed a claim and although Movant "is not seeking relief against the State at this time" the State opposes the instant motion "for the sake of judicial economy." (Rec. Doc. Nos. 173-2 at 2; 190 at 2).

*Nerco* involved the claims of platform owners against a third party tortfeasor for damage sustained to the platform and those resulting from an allision borne shut-in. The case at bar involves no third party tortfeasor; Respondents interest here is 100% of the mineral interests here involved. Although the measurement of damages in *Nerco*, discussed *supra* and slightly different from the "fair return on investment" method may here be appropriate rather than the "lost profits" method discussed in the *Nerco* opinion regarding the *Electra* court's opinion.

The Fifth Circuit's holding in *Nerco* regarding royalties does not, as Movant suggests, "mandate[] dismissal of the deferred

production claims asserted . . . by parties whose entitlement to royalties depends on production."

New Orleans, Louisiana, this 19TH day of July, 2011.

_____
UNITED STATES DISTRICT JUDGE