UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GULF PRODUCTION CO., INC., et al.      CIVIL ACTION NO. 08-5016

VERSUS                                 JUDGE LEMELLE

HOOVER OILFIELD SUPPLY, INC., et al.   MAGISTRATE JUDGE ROBY

## ORDER AND REASONS

Before the Court is Defendant Ployflow, Inc's Motion for
Partial Summary Judgment (Rec. Doc. No. 183), which is opposed by
Plaintiffs B&L Exploration, LLC ("B&L"), Ralaco Ventures, LLC
("Ralaco"), Lake Eugenie Land & Development, Inc. ("Lake Eugenie"),
and 50196, LLC ("50196") (Rec. Doc. No. 205); Plaintiffs Gulf
Production, Inc., Gulf Explorer, LLC, and Kaiser-Francis Gulf Coast
(collectively, "Gulf") (Rec. Doc. No. 267), and Plaintiff State of
Louisiana through the State Mineral and Energy Board (collectively,
"the State") (Rec. Doc. No. 273).

For the following reasons, Polyflow's Motion for Partial
Summary Judgment is **DENIED**.

Plaintiffs filed this diversity action to recover damages
resulting from alleged improper application of a natural gas flow
line. Plaintiffs Gulf, Ralaco, and B&L are working interest owners
and/or mineral lessees under a joint operating agreement with Gulf
Production. The State, 50196, and Lake Eugenie are royalty owners,
and B&L is also an over-riding royalty owner. The natural gas flow
line at issue was made with Thermoflex pipe, which is manufactured

1

by Polyflow. Co-Defendant Hoover Oilfield Supply, Inc. ("Hoover") is a certified distributer of Thermoflex pipe and requires that one of their qualified technicians oversee the installation and fabrication of line pipe with Thermoflex. Hoover is not involved in the instant Motion for Partial Summary Judgment.

Hoover entered into a contract with Gulf for the installation of the natural gas flow line ("flow line").  The flow line was to be constructed with Thermoflex piping.  The flow line was installed to transport natural gas from two producing wells on St. Bernard properties over land owned by Plaintiff Biloxi Marsh Lands Corporation ("Biloxi").

Gulf and the other working interest owners Ralaco and B&L are participating members in a Joint Operating Agreement ("agreement") for the development, production, and sale of oil and gas or other minerals from certain properties in St. Bernard Parish. Under the agreement, Gulf became the designated operator. All parties to the agreement contributed to the costs for development, recovery, production, transmission, and sale of natural gas. Each working interest owner was responsible for its share of all related costs and expenses in the acquisition, fabrication, and installation of the flow line. The State, 50196, and Lake Eugenie, as royalty owners, were not required to pay for their royalty share of costs and expenses.

Plaintiffs allege that representatives and technicians from

Defendants Hoover and Polyflow directed and participated in the fabrication, construction, and installation of the flow line. Also, Plaintiffs allege that Defendants confirmed and warranted in writing that the Thermoflex pipe was rated at a maximum operating pressure of 1200 psi and a braid strength of over 1700 psi, indicating the flow line's fitness for the purpose of transporting natural gas over long distances. On the say the construction of the flow line was completed, it failed during a hydrostatic test at 756 psi. During the failure, the flow line ruptured in several places, causing the pipe line to twist and coil over the marsh.

Plaintiffs filed suit against Defendants claiming, among several causes of action, that because of the failure, the natural gas could not be transported for sale, causing them substantial damages. Plaintiffs also seek economic damages for the cost of installing, removing, and storing the Thermoflex pipe. Defendant Polyflow filed the instant Motion for Partial Summary Judgment, seeking dismissal of the tort claims of the working interest owners and the royalty owners (with the exception of the State).

Polyflow asserts that the deferred production tort claims of the "Non-Operating Plaintiffs" (the working interest owners and royalty owners, above) should be dismissed. Polyflow contends that, under Louisiana's duty/risk analysis of tort claims, the Non-Operating Plaintiffs cannot prove any of the essential elements required to attach liability, but focuses its argument on the scope

of protection element. (Rec. Doc. No. 183-2 at 4). Polyflow asserts that there is no ease of association between the victims' alleged injuries, the alleged tort, and these plaintiffs' alleged damages. (*Id*. at 6). Furthermore, Polyflow asserts that the Non-Operating Plaintiffs' deferred production claims assert economic injuries that do not fall within the scope of Polyflow's general legal duties not to manufacture defective products. (*Id*. at 7).

Polyflow asserts, secondly, that Plaintiffs Gulf and Biloxi's tort claims are improper under the Louisiana Products Liability Act, which establishes the exclusive theories of liability for manufacturers for damages caused by their products. Polyflow thus argues that Gulf and Biloxi may maintain only a cause of action for breach of the warranty against redhibitory defects, assuming a vendor/vendee relationship exists. *Id*. at 7.

Plaintiffs B&L, Ralaco, 50196, and Lake Eugenie jointly filed an opposition to Polyflow's motion (Rec. Doc. No. 205), alleging that Polyflow owed a duty to the Non-Operating Plaintiffs and that there is an ease of association between the failure of Polyflow's product and the damages suffered by these Plaintiffs. Rec. Doc. No. 205 at 1. The further assert that the question of ease of association is a question of fact for the jury. *Id*. at 1-2.

Specifically, B&L, Ralaco, and Gulf assert that, as working interest owners and participants to the Joint Operating Agreement, they were co-purchasers and co-owners of the Thermoflex pipe. *Id*.

4

at 2. Thus, they argue, the failure of the pipe caused the working interest owners direct and immediate damages, namely loss of the purchase price of the pipe, loss of the installation costs of the pipe, and loss of the economic interest in the sale of the gas that would have been transported through the pipe. *Id*. at 3.

On the other hand, they argue that the remaining Non-Operating Plaintiffs, the State, 50196, and Lake Eugenie, have claims against Polyflow because Polyflow owes these plaintiffs a duty under Article 2315 of the Louisiana Civil Code, which covers "every act whatever of man that causes damage to another." Plaintiffs assert that they were directly and foreseeably damaged when the natural gas in which they had an ownership interest could not be transported to the point of sale. (Rec. Doc. No. 205 at 9).

Plaintiff Gulf, collectively, also opposes the Motion for Partial Summary Judgment, asserting that a dismissal of Plaintiffs' tort claims would be contrary to the law. (Rec. Doc. No. 267 at 2). Gulf asserts that Polyflow is liable to the working interest owners under the five-prong test of the Louisiana duty/risk analysis and alleges that the facts of this case are distinguished from the precedent cases which Polyflow seeks to apply. (*Id*. at 3-5).

Gulf asserts that the issue of the Louisiana Products Liability Act was addressed by the Court in its Order and Reasons denying Polyflow's 12(b)(6) Motion to Dismiss (Rec. Doc. No. 28). Gulf reiterates the arguments of other plaintiffs in opposition to

the motion to dismiss (Rec. Doc. No. 18), namely (1) that it has a valid cause of action for the negligent conduct of Polyflow's agents, employees, and representatives that are separate and apart from and unrelated to the condition or manufacture of the product, and (2) that an action for economic damages caused by a breach of the implied warranty of fitness (redhibition) is not subject to the exclusivity provisions of the Louisiana Products Liability Act.

The State filed an opposition to the Partial Motion for Summary Judgment (Rec. Doc. No. 273), despite the fact that Polyflow did not bring this motion against the State. (Rec. Doc. No. 273 at 1). The State adopts and incorporates the substance of the memoranda filed by the other Plaintiffs and incorporates its arguments from its Reply Brief to Polyflow's Objection to Magistrate Judge Roby's Granting of the State's Intervention (Rec. Doc. No. 271). (*Id*. at 2).

A.   Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

(1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.,* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.   Non-Operating Plaintiffs' Tort Claims

Polyflow's Motion for Partial Summary Judgment on Tort Claims seeks dismissal of the Non-Operating Plaintiffs' tort claims for deferred production damages under La. Civ. Code art. 2315. (Rec. Doc. No. 183-2 at 2). Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under La. Civ. Code art. 2315. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.,* 01-2217 (La. 4/3/02), 816 So.2d 270, 276. Under this negligence duty/risk analysis, a plaintiff must establish that (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard

7

conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) the plaintiff suffered actual damages (the damage element).*Id*. The existence of a duty is a question of law, as is the question of whether a specific risk is included within the scope of the duty owed. *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1205 (5th Cir. 1992).

Polyflow focus its motion on negating the scope of protection element (Rec. Doc. No. 183-2). Polyflow cites *PPG Industries, Inc. v. Bean Dredging*, 442 So.2d 1058 (La. 1984) as support for entry of partial summary judgment. (Rec. Doc. No. 183-2 at 5-6). Polyflow asserts that the economic injuries alleged by the Non-Operating Plaintiffs, as analyzed under *PPG Industries*, do not fall within the scope of Polyflow's duty not to manufacture defective products. (Rec. Doc. No. 183-2 at 7).

In *PPG Industries*, the defendant's dredging operations damaged a natural gas pipeline owned by Texaco, which had contracted to supply natural gas to PPG. 442 So.2d at 1059. As a result of the damage to the pipeline, PPG was forced to obtain natural gas from another source. PPG sued the dredging company seeking recovery of the additional costs expended to obtain gas. *Id*. Bean Dredging, the dredging company, filed an exception of no cause of action, contending that Louisiana has never recognized the right of

recovery for negligent interference with contractual relations. *Id.* at 1060. The Louisiana Supreme Court abandoned per se exclusion of such claims that Louisiana courts had previously adopted, and instead applied a duty/risk analysis to determine whether PPG's claims fell within the scope of Bean Dredging's duty. *Id.* at 1061. The court stated that "there must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered." *Id.* The court denied recovery to PPG because Bean Dredging's duty not to negligently damage property belonging to Texaco "did not encompass the particular risk of injury sustained by PPG and did not intend protection from the particular loss for which recovery is sought in PPG's petition." *Id.* at 1062. The Louisiana Supreme Court denied recovery in order to avoid creating liability "in an indeterminate amount for an indeterminate time to an indeterminate class." *Id.* at 1061 (internal citation omitted). The court made a policy decision on the limitation of recovery of damages, drawing the line of limitation based on the court's determination of the scope of Bean Dredging's duty. *Id.* at 1061-62.

Similarly, in the Fifth Circuit, "the primary indicator of duty is whether the harm suffered by the plaintiff was foreseeable. Harm is foreseeable if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human

intervention." *Crear v. Omega Protein, Inc.*, 86 Fed.Appx. 688, 690-91 (5th Cir. 2004)(internal citations omitted).

Here, Polyflow asserts that the duty/risk analysis, as applied to the facts of this case, supports a partial summary judgment by negating the scope of protection element. (Rec. Doc. No. 183-2 at 4). Polyflow alleges that its duty not to manufacture defective products did not encompass the risk of injury sustained by the Non-Operating Plaintiffs for deferred production tort claims.

However, Polyflow has not negated the scope of protection element, as a matter of law, because the duty/risk analysis of *PPG Industries* does not preclude recovery by the Non-Operating Plaintiffs under the facts of this case. *PPG Industries* is distinguishable for three reasons: (1) there is an ease of association between Polyflow's duty not to manufacture defective products and the Non-Operating Plaintiffs' harm; (2) the Non-Operating Plaintiffs incurred economic losses that were direct; and (3) allowing the Non-Operating Plaintiffs' claims to go forward would not create liability in an indeterminate amount for an indeterminate time to an indeterminate class. Therefore, Polyflow's Motion for Partial Summary Judgment on Tort Claims must be denied.

First, in order to determine whether Polyflow has negated the scope of protection element, the proper inquiry is "how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced." *Roberts v. Benoit*, 605 So.2d 1032, 1045 (La.

10

1991). Absent an ease of association between the duty breached and the damages sustained, legal fault is lacking. *Id*. Here, there is an ease of association between Polyflow's duty not to manufacture defective products and the Non-Operating Plaintiffs' harm. Injury to the Non-Operating Plaintiffs was foreseeable when the pipeline was installed as the only means by which the natural gas produced from the well would be transported from the well to the point of sale. The Non-Operating Plaintiffs as working interest owners or mineral interest owners were the beneficiaries of any sale of natural gas produced from the two wells at issue, so it was foreseeable when the pipeline was installed that any failure in the pipeline would have injured the Non-Operating Plaintiffs.

However, "[a]lthough the ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone." *Roberts*, 605 So.2d at 1045. Here, there is an ease of association because there are no attenuating factors to make association more difficult. The Non-Operating Plaintiffs would have directly benefitted from the sale of natural gas that would have been produced from the wells at issue and transported to the point of sale through a working pipeline, but for the failure of Polyflow's allegedly defective pipeline. There is no attenuating factor, such as a third-party purchaser of the gas from the injured pipeline owner as in *PPG Industries*. Contrary to the instant plaintiffs, PPG Industries had no direct relationship with the alleged

11

tortfeasor. *PPG Industries, Inc. v. Shell Oil Co.*, 447 So.2d 1058 (La. 1984). Polyflow's duty not to manufacture a defective pipeline is easily associated with the economic injuries sustained by the parties who stood directly to benefit from the production of natural gas delivered to the point of sale by way of a working pipeline. Accordingly, Polyflow has not negated the scope of protection element under the duty/risk analysis of the Non-Operating Plaintiffs' claims.

The rationale employed in *PPG Industries* is inapplicable here because the Non-Operating Plaintiffs incurred direct economic losses. In *PPG Industries*, PPG was a contract customer of the pipeline owner (Texaco) which was forced to seek and obtain natural gas at a higher price from another supplier because a dredging company negligently damaged Texaco's pipeline. 442 So.2d at 1059. The Louisiana Supreme Court characterized PPG as a plaintiff "whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner." *Id*. at 1061. The court stated that *PPG Industries* brought "into focus the broad question of recovery of an indirect economic loss incurred by a party who had a contractual relationship with the owner of property negligently damaged by a tortfeasor." *Id*. at 1059. Here, in contrast, the Non-Operating Plaintiffs' deferred production claims under La. Civ. Code art. 2315 produced credible evidence that they suffered direct economic damages from the gas

not being able to be transported through Polyflow's allegedly
defective product. (Rec. Doc. No. 205 at 7). The working interest
owners and mineral interest owners are not alleging that Polyflow
negligently interfered with the performance of a contract; they
allegedly lost revenues directly from their inability to transport
the natural gas from the wells to the point of sale through the
ruptured pipeline. *Id*. Therefore, the rationale employed in *PPG
Industries* is inapplicable to the damages alleged here, and
Polyflow has failed to negate the scope of protection element under
the duty/risk analysis of the Non-Operating Plaintiffs' claims.

Finally, allowing the Non-Operating Plaintiffs' claims to go
forward would not create liability in an indeterminate amount for
an indeterminate time to an indeterminate class; therefore the
concerns expressed in *PPG Industries* do not apply here. The
Louisiana Supreme Court, in denying recovery to PPG, considered the
policy implications of imposing responsibility on the dredging
company for indirect economic losses and expressed concern that
"the list of possible victims and the extend of economic damages
might be expanded indefinitely." *PPG Industries*, 442 So.2d at 1061-
62. The court "necessarily [made] a policy decision on the
limitation of recovery of damages" based on the facts of that case.
*Id*. Here, the undisputed facts show that there are a limited number
of working interest owners and royalty interest owners, such that
the class of plaintiffs is not indeterminate and the list of

possible victims is not in danger of indefinite expansion.

The concerns that formed the basis of *PPG Indsutries*' limitation of recovery do not apply here, so the economic injuries alleged by the Non-Operating Plaintiffs do not fall outside the scope of Polyflow's duty not to manufacture defective products. Moreover, the Non-Operating Plaintiffs can carry their burden of production as to the other elements of the duty/risk analysis. Summary judgment on their tort claims is denied.

C. Exclusivity of Louisiana Products Liability Act

In Order and Reasons dismissing Defendants Hoover and Polyflow's Motion to Dismiss claims under Federal Rule of Civil Procedure 12(b)(6), this Court found that negligence, negligent or intentional misrepresentation, and redhibition/breach of implied warranty of fitness claims could be supported under the facts of this case. (Rec. Doc. No. 28 at 17).

Polyflow correctly points out that the *prima facia* burden of proof necessary to survive a motion to dismiss is much less than the burden necessary to survive a motion for summary judgment. (Rec. Doc. No. 324 at 4). However, in summary judgment practice, when the non-moving party bears the burden of proof as to an issue, the movant must point to an absence of evidence supporting it, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618

(5th Cir. 1994) (citing *Celotex Corp. V. Catrett*, 477 U.S. 317 (1986)). Polyflow attempts to re-litigate the purely legal issue of whether the claims are permitted in light of the Louisiana Products Liability Act. This Court has already ruled that the actions may be maintained. As such, summary judgment on this issue is denied.


New Orleans, Louisiana, this 30th day of September, 2011.

_____
UNITED STATES DISTRICT JUDGE